UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KRIS BORTNOVSKY<br>a/k/a "Kris Bort,"<br><br>Defendant | Criminal No. 25cr10171<br><br>Violations:<br><br><u>Count One</u>: Conspiracy to Commit Securities Fraud<br>(18 U.S.C. § 1349)<br><br><u>Count Two</u>: Conspiracy to Commit Securities Fraud<br>(18 U.S.C. § 371)<br><br><u>Count Three</u>: Securities Fraud; Aiding and Abetting<br>(18 U.S.C. §§ 1348 and 2)<br><br><u>Count Four</u>: Securities Fraud; Aiding and Abetting<br>(15 U.S.C. §§ 78j(b) and 78ff(a); 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2)<br><br><u>Count Five</u>: False Statements<br>(18 U.S.C. § 1001(a)(2))<br><br><u>Count Six</u>: Obstruction of Justice<br>(18 U.S.C. §§ 1512(b)(1) and 3147)<br><br><u>Forfeiture Allegation</u>:<br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.     Defendant KRIS BORTNOVSKY, also known as "Kris Bort," was a resident, variously, of New York and Florida.  BORTNOVSKY was the president and co-founder of Sakal

Capital Management, LLC ("Sakal Capital Management"), a privately held asset management firm incorporated in Delaware, and managed the Sakal US Fund LLC ("Sakal US Fund").

2.      CC-1 was a resident of Florida and, at relevant times, was an investor in the Sakal US Fund. CC-1 was a relative of Individual 1 and Individual 2 and had a relationship of trust and confidence with both of them.

3.      CC-2 was a resident, variously, of New York and Florida. CC-2 was a friend of BORTNOVSKY and, at relevant times, was an investor in the Sakal US Fund.

4.      CC-3 was a resident, variously, of New York and Florida. CC-3 was a friend of CC-2.

5.      CC-4 was a resident, variously, of New York and Florida. CC-4 was a friend of BORTNOVSKY and CC-2. CC-4 was a close friend of Individual 3 and had a relationship of trust and confidence with him.

6.      Individual 1 was, at relevant times, a member of the board of directors of DSW, Inc. ("DSW"), a publicly-traded footwear and accessories retailer based in Columbus, Ohio. Between in or about February 2018 and November 2018, Individual 1 was also a member of the board of directors of Green Growth Brands ("GGB"), a retailer of cannabis-related products also based in Columbus, Ohio. As a member of the boards of directors of both DSW and GGB, Individual 1 owed a fiduciary duty and a duty of trust and confidence to those companies. After November 2018, Individual 1 continued to owe duties of loyalty and confidentiality to GGB commensurate with those owed by the company's directors pursuant to a "Board Observer Agreement" that provided, in relevant part, that he would not use or disclose "any confidential or proprietary information" relating to GGB's "business and affairs." Individual 1 was a close relative of Individual 2 and had a relationship of trust and confidence with Individual 2.

2

7.     Individual 2 was, at relevant times, a member of the boards of directors of both DSW and Albertsons Companies, Inc., a supermarket chain based in Boise, Idaho. In that capacity, Individual 2 owed a fiduciary duty and a duty of trust and confidence to those companies.

8.     Individual 3 was, at relevant times, a partner at a private equity firm in New York (the "Private Equity Firm"). In that capacity, Individual 3 owed a fiduciary duty and a duty of trust and confidence to the Private Equity Firm, its partners, and its portfolio companies.

9.     Aphria, Inc. ("Aphria") was a producer and distributor of cannabis products based in Leamington, Ontario, Canada. At relevant times, Aphria traded on the New York Stock Exchange ("NYSE") under the ticker symbol APHA and was an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (the "Exchange Act").

10.    At Home Group, Inc. ("At Home"), was a retailer of home décor products based in Plano, Texas that, at relevant times, traded on the NYSE under the ticker symbol HOME and was an issuer with a class of securities registered under Section 12 of the Exchange Act. In or around 2011, At Home was acquired by an investment group led by the Private Equity Firm, and at relevant times, the Private Equity Firm was part of a group that owned a majority of At Home's publicly traded shares. At relevant times, multiple partners of the Private Equity Firm were members of the board of directors of At Home, and accordingly, owed a fiduciary duty and a duty of trust and confidence to At Home.

11.    At relevant times, the shares of DSW traded on the NYSE under the ticker symbol DSW. In or about March 2019, DSW changed its name to Designer Brands, Inc., and its shares have since then traded on the NYSE under the ticker symbol DBI. At relevant times, the company was an issuer with a class of securities registered under Section 12 of the Exchange Act.

12. Rite Aid Corp. ("Rite Aid") was a drugstore chain based in Philadelphia, Pennsylvania. At relevant times, Rite Aid traded on the NYSE under the ticker symbol RAD and was an issuer with a class of securities registered under Section 12 of the Exchange Act.

Overview of the Securities Fraud Conspiracies and the Scheme to Defraud

13. Beginning no later than August 2017 and continuing through at least May 2019, BORTNOVSKY, CC-1, CC-2, CC-3, and CC-4 conspired with each other, and with others known and unknown to the Grand Jury, to obtain material non-public information ("MNPI") about the financial performance and merger-and-acquisition activity of various publicly-traded companies and to execute securities trades while in possession of that MNPI.

Object and Purposes of the Securities Fraud Conspiracies

14. The object of the conspiracies was to commit securities fraud by trading in the securities of various companies while in possession of MNPI about those companies. The principal purposes of the conspiracies were to make money and to conceal the conspirators' actions from others, including regulators, law enforcement, and Individual 1, Individual 2, and Individual 3.

Manner and Means of the Securities Fraud Conspiracies and the Scheme to Defraud

15. Among the manner and means by which BORTNOVSKY, CC-1, CC-2, CC-3, CC-4, and others known and unknown to the Grand Jury carried out the conspiracies and the scheme to defraud were the following:

    a. Obtaining and sharing with each other MNPI about various companies, including but not limited to companies with which Individual 1, Individual 2, Individual 3 were affiliated as major investors and board members, or about which they otherwise had confidential business information;

b.  Trading in the securities of those companies while in possession of that MNPI, in violation of the duties of trust and confidence the conspirators owed to the sources of the information, or that the sources owed the companies; and

c.  Taking steps to conceal the scheme from regulators, law enforcement, and others, including by communicating about the MNPI in person, using coded language, and sending false exculpatory messages.

Overt Acts in Furtherance of the Securities Fraud Conspiracies and the Scheme to Defraud

16. Beginning no later than in or about August 2017 and continuing through at least May 2019, BORTNOVSKY, together with CC-1, CC-2, CC-3, CC-4, and others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracies and the scheme to defraud:

*DSW*

17. In or about August 2017, prior to the public announcement of DSW's second quarter 2017 earnings, CC-1 obtained MNPI from Individual 1 regarding DSW's financial performance, which Individual 1 shared with CC-1 in trust and confidence.

18. While in possession of MNPI about DSW's financial performance that CC-1 had obtained from Individual 1, CC-1 purchased securities of DSW. For example, on or about August 15, 2017, CC-1 purchased DSW securities, including DSW call option contracts through Fidelity Capital Markets, a Boston, Massachusetts-based trading unit of Fidelity Investments ("Fidelity"), a brokerage and financial services firm.

19. On or about that same day, August 15, 2017, CC-1 provided the MNPI regarding DSW to BORTNOVSKY. On or about that same day, August 15, 2017, BORTNOVSKY, while in possession of that MNPI, caused the Sakal US Fund to purchase DSW securities.

20. Also on or about that same day, CC-1 and BORTNOVSKY exchanged messages intended to conceal their fraud by falsely claiming that they were not trading on the basis of MNPI. CC-1 wrote: "[T]o be clear and for the record I don't have any sort of special insight or info or anything like that. Just a feeling[.]" BORTNOVSKY responded: "I didn't think anything different[.]" The messages were false because, as BORTNOVSKY and CC-1 both knew, they were in possession of MNPI about DSW's financial performance that CC-1 had obtained from Individual 1 and shared with BORTNOVSKY in violation of CC-1's duty of trust and confidence to Individual 1.

21. As another example, on or about August 18, 2017, while in possession of MNPI about DSW's financial performance CC-1 had obtained from Individual 1, CC-1 purchased additional DSW securities, including through Fidelity's trading operations in Boston, Massachusetts.

22. On or about that same day, August 18, 2017, while in possession of MNPI about DSW's financial performance, BORTNOVSKY caused the Sakal US Fund to purchase DSW securities for approximately $2 million.

23. On or about August 21, 2017, BORTNOVSKY, while in possession of MNPI about DSW's financial performance, borrowed $300,000 from a close relative and $600,000 from another individual, and used those funds to purchase additional DSW securities.

6

24. On or about that same day, August 21, 2017, BORTNOVSKY, while in possession of MNPI about DSW's financial performance, caused Sakal Capital Management and the Sakal US Fund to purchase additional DSW securities.

25. On or about August 22, 2017 and August 23, 2017, after DSW announced strong quarterly financial results for the second quarter of 2017, BORTNOVSKY and CC-1 sold all the DSW securities they had acquired in their personal accounts, and BORTNOVSKY also caused the sale of all the DSW securities he had caused Sakal Capital Management and the Sakal US Fund to acquire.

26. In or about December 2018, prior to the public announcement of DSW's third quarter 2018 earnings, CC-1 obtained MNPI from Individual 1 regarding DSW's financial performance, which Individual 1 shared with CC-1 in trust and confidence, and CC-1 provided that MNPI to BORTNOVSKY.

27. On or about December 10, 2018, one day before the announcement of DSW's third quarter 2018 earnings, and while in possession of MNPI regarding DSW's financial performance, BORTNOVSKY caused the Sakal US Fund to purchase DSW securities.

28. On or about that same day, December 10, 2018, BORTNOVSKY conveyed the MNPI regarding DSW to CC-2, and BORTNOVSKY instructed CC-2 to purchase DSW securities.

29. On or about that same day, December 10, 2018, CC-2 purchased DSW securities while in possession of MNPI about DSW's financial performance, and CC-2 conveyed that MNPI to CC-3. On or about that same day, December 10, 2018, CC-3 purchased DSW securities while in possession of MNPI about DSW's financial performance.

30. On or about December 11, 2018, after DSW announced strong quarterly financial results for the third quarter of 2018, CC-2 messaged BORTNOVSKY: "Booom" [sic]. BORTNOVSKY responded: "Yes!!"

*At Home*

31. In or about August 2017, after CC-4 obtained MNPI from Individual 3 regarding the fact that At Home was in discussions to potentially be acquired by a different private equity firm ("Private Equity Firm 2"), which Individual 3 shared with CC-4 in trust and confidence, CC-4 conveyed that MNPI to BORTNOVSKY.

32. On or about August 28, 2017, while in possession of MNPI regarding the potential acquisition of At Home, which as BORTNOVSKY knew, CC-4 had shared with BORTNOVSKY in violation of the duty of trust and confidence CC-4 owed Individual 3, BORTNOVSKY purchased At Home securities.

33. On or about that same day, August 28, 2017, CC-1 purchased At Home securities after BORTNOVSKY initially told CC-1, in substance, that At Home would report strong earnings in September 2017.

34. On or about September 6, 2017, after At Home's quarterly earnings announcement, BORTNOVSKY conveyed to CC-1 the MNPI regarding the potential acquisition of At Home, which BORTNOVSKY had obtained from CC-4.

35. In or about March 2019, after the 2017 potential acquisition discussions regarding At Home ended without a transaction, and after Private Equity Firm 2 again entered into discussions to potentially acquire At Home, CC-4 conveyed that MNPI to BORTNOVSKY.

36. On or about March 19, 2019, while in possession of MNPI regarding the potential acquisition of At Home, BORTNOVSKY caused the Sakal US Fund to purchase At Home securities.

37. On or about April 1, 2019, after BORTNOVSKY conveyed to CC-2 the MNPI regarding the potential acquisition of At Home, CC-2 purchased At Home securities while in possession of MNPI.

38. On or about May 21, 2019, after the discussions regarding a potential acquisition of At Home again terminated, and while in possession of that MNPI, BORTNOVSKY sold At Home securities.

39. On or about that same day, May 21, 2019, BORTNOVSKY sent a message to CC-2: "Get out of home." On or about that same day, May 21, 2019, CC-2 sold At Home securities while in possession of MNPI that the At Home acquisition discussions had terminated.

*Rite Aid*

40. On or about August 31, 2017, after obtaining MNPI from Individual 1 that Albertsons was planning to acquire Rite Aid, which Individual 1 shared with CC-1 in trust and confidence, CC-1 purchased Rite Aid securities.

41. Between on or about September 15, 2017 and on or about February 20, 2018, CC-1 continued to obtain MNPI about Albertsons' plans to acquire Rite Aid from Individual 1 pursuant to their relationship of trust and confidence, and to share that information with BORTNOVSKY.

42. On or about September 19, 2017—while in possession of MNPI about Albertsons' plans to acquire Rite Aid, which as BORTNOVSKY knew, CC-1 had shared with BORTNOVSKY in violation of the duty of trust and confidence CC-1 owed Individual 1—BORTNOVSKY purchased Rite Aid securities.

43. On or about February 14, 2018, while in possession of MNPI regarding Albertsons' plans to acquire Rite Aid, BORTNOVSKY caused the Sakal US Fund to acquire Rite Aid securities.

44. On or about Sunday, February 18, 2018, CC-1 messaged BORTNOVSKY, "Talk to u Tuesday," and sent him a photo depicting a Rite Aid Pharmacy sign. BORTNOVSKY responded, "That's a sign."

45. On or about Tuesday, February 20, 2018, after the Wall Street Journal reported that Albertsons planned to acquire Rite Aid, CC-1 sold Rite Aid securities.

*Aphria*

46. In or about December 2018, after CC-1 obtained MNPI from Individual 1 regarding GGB's plan to launch a hostile acquisition bid for Aphria, which Individual 1 shared with CC-1 in trust and confidence, CC-1 acquired Aphria securities. Thereafter, in or about December 2018, CC-1 shared with BORTNOVSKY that MNPI regarding GGB's plan to launch a hostile acquisition bid for Aphria, which as BORTNOVSKY knew, CC-1 had shared with BORTNOVSKY in violation of the duty of trust and confidence CC-1 owed Individual 1.

47. On or about December 14, 2018, after meeting with Individual 1 and obtaining information about GGB's acquisition plans, CC-1 caused a close relative with trading authority over one of CC-1's brokerage accounts to acquire Aphria securities, and also made plans to meet with BORTNOVSKY.

48. On or about December 18, 2018, after CC-1 met with BORTNOVSKY and shared MNPI with him concerning GGB's acquisition plans, BORTNOVSKY caused the Sakal US Fund to acquire Aphria securities.

49. On or about December 24, 2018, while in possession of MNPI regarding GGB's acquisition plans, BORTNOVSKY caused the Sakal US Fund to acquire Aphria securities.

50. On or about December 26, 2018, after BORTNOVSKY provided CC-2 the MNPI regarding GGB's acquisition plans, CC-2 purchased Aphria securities while in possession of that MNPI.

51. On or about that same day, December 26, 2018, CC-2 provided CC-3 the MNPI regarding GGB's acquisition plans. Later, on or about that same day, CC-3 sent a message to CC-2, "Should we be in options if there's gonna be a sale," and later, "We gotta focus on tomorrow apha shouldn't we be crushing options on a sale?"

52. On or about December 28, 2018, as Aphria's share price increased after the public announcement of GGB's hostile bid, BORTNOVSKY caused the Sakal US Fund to sell Aphria securities.

53. On or about the same day, December 28, 2018, after BORTNOVSKY instructed CC-2 to sell his Aphria securities, CC-2 sold Aphria securities.

54. On or about January 10, 2019, CC-1 sold Aphria securities, and BORTNOVSKY caused the Sakal US Fund to sell Aphria securities.

55. On or about the following day, January 11, 2019, BORTNOVSKY caused the Sakal US Fund to sell its remaining Aphria securities.

BORTNOVSKY's False Statements and Obstruction of Justice

56.     On or about November 16, 2021, BORTNOVSKY participated in an interview with an FBI agent and an investigator of the U.S. Attorney's Office for the District of Massachusetts. During that interview, BORTNOVSKY made the following false statements:

   a.   BORTNOVSKY did not trade any securities based on information from CC-1.

   b.   BORTNOVSKY never traded DSW and Aphria based on inside information from CC-1.

   c.   CC-1 did not have inside information because CC-1 was not on the boards of directors of DSW or companies involved in the potential acquisition of Aphria.

   d.   BORTNOVSKY traded Aphria based on an article by Richard Left.

   e.   During an August 2021 meeting with CC-1 at BORTNOVSKY's office, BORTNOVSKY and CC-1 discussed only private investments (that is, did not discuss stock market investments).

57.     On or about March 23, 2022, while on pre-trial conditions of release ordered by the United States District Court for the District of Massachusetts which, among other things, prohibited BORTNOVSKY from having any contact with CC-1, and knowing that CC-1 was a cooperating witness in the government's investigation and prosecution of BORTNOVSKY, BORTNOVSKY intimidated and attempted to intimidate CC-1 by, among other actions, following CC-1 into the orthodox synagogue where CC-1 was a member and, while inside wearing dark sunglasses, BORTNOVSKY stared at CC-1, with the intent to influence, delay, and prevent the testimony of CC-1.

## COUNT ONE
### Conspiracy to Commit Securities Fraud
### (18 U.S.C. § 1349)

The Grand Jury charges:

58. The Grand Jury re-alleges and incorporates by reference paragraphs 1-57 of this Indictment.

59. From in or about at least August 2017 through in or about at least May 2019, in the District of Massachusetts and elsewhere, the defendant,

**KRIS BORTNOVSKY,**
a/k/a "Kris Bort,"

conspired with CC-1, CC-2, CC-3, CC-4, and with others known and unknown to the Grand Jury, to commit securities fraud, that is, to knowingly execute and attempt to execute a scheme and artifice (a) to defraud persons in connection with securities of issuers with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including DSW, Inc., also known as Designer Brands, Inc., At Home Group, Inc., Aphria, Inc., and Rite Aid Corp., and (b) to obtain, by means of false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of securities of issuers with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including DSW, Inc., also known as Designer Brands, Inc., At Home Group, Inc., Aphria, Inc., and Rite Aid Corp., in that BORTNOVSKY traded in the securities of those companies while in possession of material non-public information, and provided material non-public information to other co-conspirators so that they could trade in the securities of those companies, in violation of Title 18, United States Code, Section 1348.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
### Conspiracy to Commit Securities Fraud
### (18 U.S.C. § 371)

The Grand Jury further charges:

60. The Grand Jury re-alleges and incorporates by reference paragraphs 1-57 of this Indictment.

61. From in or about at least August 2017 through in or about at least May 2019, in the District of Massachusetts and elsewhere, the defendant,

### KRIS BORTNOVSKY,
### a/k/a "Kris Bort,"

conspired with CC-1, CC-2, CC-3, CC-4, and with others known and unknown to the Grand Jury, to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, that is, knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase or sale of securities in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and to (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engage in acts, practice, and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities, including securities of DSW, Inc., also known as Designer Brands, Inc., At Home Group, Inc., Aphria, Inc., and Rite Aid Corp.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE
### Securities Fraud; Aiding and Abetting
### (18 U.S.C. §§ 1348 and 2)

The Grand Jury further charges:

62. The Grand Jury re-alleges and incorporates by reference paragraphs 1-57 of this Indictment.

63. From in or about at least August 2017 through in or about at least May 2019, in the District of Massachusetts and elsewhere, the defendant,

### KRIS BORTNOVSKY,
### a/k/a "Kris Bort,"

knowingly executed and attempted to execute, a scheme and artifice (a) to defraud persons in connection with securities of issuers with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including DSW, Inc., also known as Designer Brands, Inc., At Home Group, Inc., Aphria, Inc., and Rite Aid Corp.; and (b) to obtain, by means of false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of securities with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including DSW, Inc., also known as Designer Brands, Inc., At Home Group, Inc., Aphria, Inc., and Rite Aid Corp., in that BORTNOVSKY traded in the securities of those companies while in possession of material non-public information and provided material non-public information to other co-conspirators so that they could trade in the securities of those companies.

All in violation of Title 18, United States Code, Section 1348.

## COUNT FOUR
### Securities Fraud; Aiding and Abetting
(15 U.S.C. §§ 78j(b) and 78ff(a); 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2)

The Grand Jury further charges:

64. The Grand Jury re-alleges and incorporates by reference paragraphs 1-57 of this Indictment.

65. From in or about at least August 2017 through in or about at least May 2019, in the District of Massachusetts and elsewhere, the defendant,

**KRIS BORTNOVSKY,**
a/k/a "Kris Bort,"

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase or sale of securities in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities, including securities of DSW, Inc., also known as Designer Brands Inc., At Home Group, Inc., Aphria, Inc., and Rite Aid Corp.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

## COUNT FIVE
## Obstruction of Justice
## (18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

66. The Grand Jury re-alleges and incorporates by reference paragraphs 1-57 of this Indictment.

67. On or about November 16, 2021, in the District of Massachusetts and elsewhere, the defendant,

## KRIS BORTNOVSKY,
## a/k/a "Kris Bort,"

in a matter within the jurisdiction of the executive branch of the Government of the United States, specifically, an investigation by the Federal Bureau of Investigation concerning BORTNOVSKY's securities fraud, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations, as described in paragraphs 56(a) through 56(e) of this Indictment.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT SIX
## Obstruction of Justice
## (18 U.S.C. § 1512(b)(1))

The Grand Jury further charges:

68. The Grand Jury re-alleges and incorporates by reference paragraphs 1-57 of this Indictment.

69. On or about March 23, 2022, in the District of Massachusetts and elsewhere, the defendant,

## KRIS BORTNOVSKY,
## a/k/a "Kris Bort,"

knowingly used intimidation, threatened, and corruptly persuaded another person, and attempted to do so, and engaged in misleading conduct toward another person, with intent to influence, delay, and prevent the testimony of any person in an official proceeding, to wit, while on pre-trial conditions of release ordered by the United States District Court for the District of Massachusetts, BORTNOVSKY intimidated and attempted to intimidate CC-1, who was a cooperating witness in a prosecution of BORTNOVSKY.

All in violation of Title 18, United States Code, Sections 1512(b)(1) and 3147.

Defendant was on release pursuant to an order dated December 8, 2021, from the United States District Court for the Southern District of Florida, Case No. 21-mj-4308, pursuant to an arrest warrant issued by the United States District Court for the District of Massachusetts, Case No. 22-cr-10006-WGY, 21-mj-02826-MBB, which order notified said defendant of the potential effect of committing an offense while on pretrial release. Accordingly, Title 18, United States Code, Section 3147(1), is applicable to this count.

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

70. Upon conviction of one or more of the offenses charged in Counts One through Four, the defendant,

KRIS BORTNOVSKY,
a/k/a "Kris Bort,"

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

71. If any of the property described in paragraph 70, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 70 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

*[signature]*
FOREPERSON

*[signature]*
KAITLIN R. O'DONNELL
IAN J. STEARNS
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: May 6, 2025
Returned into the District Court by the Grand Jurors and filed.

/s/ Leonardo T. Vieira, 3:49pm
DEPUTY CLERK